UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| RANDY BERKSHIRE, # 371645, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10-cv-942 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| ROBERT SANDERS, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff's complaint concerns conditions of his 2010 confinement at the Oaks Correctional Facility (ECF). On July 9, 2010, plaintiff was an inmate at the Brooks Correctional Facility (LRF), where he attacked prisoner Tod Mills with a weapon fashioned from a belt and lock, inflicting serious injuries. On July 27, 2010, plaintiff was transferred into ECF as an administrative segregation prisoner. He retained that status for less than six months before being introduced into ECF's general prisoner population.

On September 20, 2010, plaintiff filed his complaint against ECF's grievance coordinator and warden, seeking a transfer to another prison. (docket # 1). On October 22, 2010, plaintiff filed his amended complaint (docket # 4), which added Assistant Deputy Warden (ADW) R. Sanders and Health Unit Manager (HUM) Anita Young as defendants. All plaintiff's claims against ECF's warden and grievance coordinator were dismissed on initial screening for failure to state a claim. (docket #s 11-12). Plaintiff asserts that ADW Sanders, a member of ECF's Security

Classification Committee (SCC), violated his First Amendment rights on August 30, 2010, and September 29, 2010, when Sanders failed to vote in favor of releasing plaintiff into ECF's general population, allegedly in retaliation for grievances plaintiff filed in August 2010. Plaintiff alleges that HUM Young was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights in August 2010 by allowing him to be housed in an uncomfortably warm cell, because his psychotropic medications made him more susceptible to heat-related illness than others. He sues defendants in their individual capacities and seeks an award of damages and injunctive relief.

The matter is before the court on defendants' motions for summary judgment. (docket #s 19, 33). Plaintiff has filed his response (docket #s 25, 38, 59, 60, 72), and defendants' motions are ready for decision. For the reasons stated herein, I recommend that plaintiff's claims for injunctive relief be dismissed as moot. I further recommend that defendants' motions for summary judgment be granted and that a final judgment be entered in defendants' favor on all plaintiff's damage claims.

## Applicable Standards

**A.      Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  "The court need consider only the cited materials, but it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3).  The court must draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1).  FED. R. CIV. P. 56(c)(1).  Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.  FED. R. CIV. P. 56(e)(2), (3); *see Bozung v. Rawson*, 439 F. App'x 513, 518-19 (6th Cir. 2011).  The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990).  "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Donald v. Sybra, Inc.*, 667 F.3d 757, 760-61 (6th Cir. 2012).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial.  "But where the moving party has the burden -- the

plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, No. 09-1825, __ F.3d __, 2012 WL 1592667, at * 2 (6th Cir. May 8, 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). This higher standard applies to the portion of defendant Young's motion for summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a).

**B.      Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies**

Defendant Young has asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner

may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734.  "This requirement is a strong one.  To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[] believes the procedure to be ineffectual or futile."  *Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216.  The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies.  The Supreme Court reiterated that "no unexhausted claim may be considered."  549 U.S. at 220.  The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims.  549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law.  *Jones v. Bock*, 549 U.S. at 218-19.  In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009).  Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section

1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[1] In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual

---

[1]A copy of the policy directive is found in the record. *See* docket # 34-2, ID#s 179-85.

is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent is generally the warden or her designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available

administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224.  An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement.  *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

## Proposed Findings of Fact

The following facts are beyond genuine issue.  Plaintiff is an inmate in the custody of the Michigan Department of Corrections (MDOC) serving prison sentences for second-degree home invasion and assault with a deadly weapon.  In early 2010, he was a security level IV prisoner at the Brooks Correctional Facility (LRF).  On July 9, 2010, plaintiff was transferred into LRF's segregation unit as a result of the major misconduct charge of "assault and battery-prisoner victim." (Sanders Aff. ¶ 4, docket # 20-1, ID# 136; Plf. Aff. ¶ 1, docket # 59,  ID# 300).  Plaintiff had been observed swinging an object in his hand and hitting prisoner Tod Mills #400451 multiple times about his head and neck.  Mills sustained lacerations to his head and neck requiring sutures. (Sanders Aff. ¶ 4, ID# 136).  On July 16, 2010, a hearing officer found plaintiff guilty of the major misconduct, and thereafter plaintiff was housed as an administrative segregation prisoner.  (Plf. Aff. ¶ 2, ID# 300).

On July 27, 2010, plaintiff was transferred to the Oaks Correctional Facility (ECF), where he remained in administration segregation. (Sanders Aff. ¶ 5, ID# 137; Plf. Aff. ¶ 2, docket # 60, ID# 304). Plaintiff states that in mid-August of 2010, the temperature of his cell at ECF "reached well over 90 [degrees]," which he attributes to "soap, dust and toilet paper" in the vent blocking air circulation." (Plf. Aff. ¶¶ 3, 4, 21, ID#s 304, 306). Air circulation is supplemented in warm weather by "large fans [] placed in each housing unit wing area." (Young Aff. ¶ 5, ID# 193). Administrative segregation cell unit temperature records reveal that it reached the 90-degree range only twice during the period from July 11, 2010, through September 4, 2010. (Young Aff. ¶ 6, docket # 34-1, ID# 193). Further, plaintiff always retained access to the cold running tap water in his cell. (Young Aff. ¶ 6, ID# 193).

Plaintiff expresses a belief that his psychotropic medications made him "more susceptible" than other prisoners to heat-related illnesses (Plf. Aff. ¶ 6, docket # 60, ID# 304), but he produced no medical evidence supporting this assertion. He has not provided any evidence regarding the medications he was taking in August 2010, much less evidence that those particular medications made him more susceptible to any heat-related illnesses. He states that he "suffered severe headaches, excessive heart rate, excessive sweating, dehydration, fatigue, disorientation, confusion and fluctuating mood, loss of sleep and appetite causing a 20 lb. weight loss in less than a 30 day period." (Plf. Aff. ¶ 22, ID# 306). There is no supporting medical evidence. The grievances plaintiff filed during this period do not suggest any disorientation or confusion.

Plaintiff's classification to administrative segregation arose from his attack on prisoner Mills with a weapon fashioned from a combination lock attached to a belt. Plaintiff hit prisoner Mills about the head and neck with this weapon, inflicting serious head and neck lacerations

requiring sutures.  (Sanders Aff. ¶ 4, ID# 136).  Plaintiff began his incarceration at ECF in administrative segregation and retained that status for almost six months.  Assistant Deputy Warden Robert Sanders is a member of ECF's Security Classification Committee (SCC).  The SCC is tasked with making recommendations to the prison's warden regarding when it would be considered safe to introduce an administrative segregation prisoner with a history of violent misconduct into ECF's general prisoner population.  The record shows that the SCC performed periodic reviews of plaintiff's segregation status.

Plaintiff received his initial SCC review on July 31, 2010, shortly after his arrival at ECF.  The SCC noted that plaintiff hit his victim with a lock attached to a belt.  (docket # 4-4, ID# 55).  The SCC determined that plaintiff's segregation status should not be altered.  (*Id.*).  The SCC remained of the same opinion on August 4, 2010.  It was noted that this was a recent administrative segregation placement, and that plaintiff would need to demonstrate positive adjustment given the serious nature of his misconduct.  (docket #4-4, ID# 56).

Plaintiff states that on August 4, 2010, "following a Security Classification Committee [Review], Defendant Sanders informed [him] that [he] would be released to general population at the end of 30 days."[2]  (Plf. Aff. ¶ 5, docket # 59, ID# 300).  Sanders denies making any such statement.  (Sanders Aff. ¶ 6).

---

[2] Plaintiff has submitted four unsworn statements of fellow prisoners, all in plaintiff's handwriting.  Paragraph 1 of the unsworn statements of Putman, Brady, and McCarver asserts: "On 8/04/10 during a S.C.C. interview he [plaintiff] was given thirty days administrative segregation, then he was to be released to general population by A.D.W.  R. Sanders."  (docket # 4-4, ID#s 48, 50, 52).  The statements of Putman, Brady, and McCarver cannot be considered because they are not signed under penalty of perjury and do not satisfy the requirements for affidavits or unsworn declarations.  *See* FED. R. CIV. P. 56(c)(4); 28 U.S.C. § 1746; *see also Tenneco Auto Operating Co. v. Kingdom Auto Parts*, 410 F. App'x 841, 847-48 (6th Cir. 2010).  Further, they do not identify the source of their knowledge.

On August 30, 2010, the SCC conducted its next classification review.  Plaintiff did not obtain the release from administrative segregation that he desired.  (docket # 4-4, ID# 59).  His comment was: " I want to be transferred back to a level 5.  I can't manage in a level 4."  The SCC determined that plaintiff's segregation status should continue.  (*Id.*).  Plaintiff now claims that sometime during the August 30, 2010 SCC interview, defendant Sanders stated: "Grievances don't work here at ECF."  (Plf. Aff. ¶ 10, docket # 59, ID# 301).

On September 2, 2010, plaintiff reiterated that he wanted to be transferred to a Level V prison facility.  The SCC recommended that plaintiff remain in administrative segregation, and ECF's warden agreed with the recommendation.   (docket # 4-4, ID# 60).   The SCC's recommendations, which remained unchanged through the remainder of September, were adopted by the warden. (docket # 4-4, ID#s 61-62).  The Mental Health Treatment Team did not recommend that plaintiff be released from administrative segregation to the Outpatient Mental Health Unit, as he did not have a major mental health diagnosis at that time.  (Sanders Aff. ¶ 7, ID# 137).

On September 20, 2010, plaintiff filed this lawsuit, seeking a transfer to another prison.   On October 22, 2010, he filed his amended complaint adding Sanders and Young as defendants.[3]  (docket # 4-4, ID#s 55-62).  The SCC continued to make periodic reviews of plaintiff's status, but its recommendation remained unchanged because of plaintiff's assaultive misconduct. (Sanders Aff. ¶ 6, ID# 37).  On January 14, 2011, less than six months after his major misconduct conviction for assault and battery, plaintiff was released into ECF's general prisoner population.

---

[3] No defendant was served in this case until after the court completed initial screening of plaintiff's amended complaint on April 28, 2011.  (docket #s 11, 12).

(Plf. Aff. ¶ 21, ID# 302).  Plaintiff is currently an inmate at the Macomb Correctional Facility (MCF).

A.      **Grievance History**

1.      ECF-2010-82640-22a

On August 6, 2010, plaintiff drafted a grievance against ADW Sanders.   The grievance coordinator received the grievance on August 17, 2010, and assigned it Grievance No. ECF-2010-82640-22a.  In response to the question regarding what he had done to attempt to resolve the issue prior to filing the grievance, plaintiff stated:  "I conversed with my primary therapist RN B. Bennett that my mental health is deteriorating due to the conditions of confinement in which I am secluded."  (docket # 4-2, ID# 32).  The body of plaintiff's grievance is set forth verbatim below:

> P.D. 04.05.120 Segregation Standards, Pg. 3; Paragraph C states, "A prisoner who is on an outpatient corrections mental health services active caseload shall be classified to administrative segregation <u>ONLY</u> after consultation with a Qualified Mental Health Professional or Mental Health Unit Chief to determine if the prisoner's mental health needs or limitations can be met in administrative segregation." RN B. Bennett conveyed to A.D.W. Sanders that administrative segregation was/is not feasible as it precludes adequate adjustment, set forth in 04.06.182 mentally disabled prisoners in segregation, but A.D.W. Sanders has maliciously shown a complete disregard toward the request of a QMPH and myself.

(docket # 4-2, ID# 32).  The gist of this grievance involves plaintiff's alleged status as a mentally disabled prisoner, not any promise by Sanders that plaintiff would be released into ECF's general population at the end of thirty days.  The Step I response is dated August 23, 2010 (docket #4-2, ID# 32), but the parties neglected to provide the court with a copy of the attachment containing the substance of the Step I response.

2.    ECF-2010-82588-28I

On August 11, 2010, plaintiff drafted a grievance complaining that he had not received a personal interview regarding his segregation status within a time frame specified by Policy Directive 04.05.120. This grievance was not written against any individual. The grievance was received by the grievance coordinator on August 13, 2010, and she assigned it Grievance No. ECF-2010-82588-28I. (docket # 4-2, ID# 34). Plaintiff offered the following rationale for his failure to attempt to resolve this issue before filing his grievance: "Prevented by circumstances beyond my control per PD 03.02.130 Prisoner/Parolee grievances. This grievance is being [written] under PD 04.05.120 Segregation Standards." (docket # 4-2, ID# 34). The body of the grievance stated as follows:

> Per above policy, under "Review of Segregation Placement" states each administrative prisoner shall be regularly reviewed by the SCC or housing unit team. Reviews shall include a personal interview with each prisoner and shall occur at intervals of no more than seven calendar days during the first two months of segregation. 8-11-10 was my seventh calendar day and I was not interviewed by SCC or housing unit team, neither at the cell or out-of-cell. This clearly shows the insubordination of the administration here at (ECF) and the lack of concern of this prisoner's individual capacity.

(docket # 4-2, ID# 34). The Step I response is not legible. (*Id.*).

3.    ECF-2010-82633-28I

On August 10, 2010, plaintiff drafted a grievance regarding his cell's temperature and the adequacy of its ventilation. The grievance coordinator received it on August 16, 2010, and assigned it Grievance No. ECF-2010-82633-28I. (docket # 4-2, ID# 33) Plaintiff stated that he was prevented by unspecified circumstances beyond his control from making an attempt to resolve this issue before filing this grievance. (*Id.*). The grievance stated as follows:

I'm an active OPT prisoner, at risk of heat related illness. I'm currently placed in the segregation cell where the windows do not open. I am being deprived of proper ventilation as the vents are damaged and unorderly [sic]. The temp. of these cells are extremely hot and humid and aren't consistent with American Correctional Association standards for adult correctional facilities. The conditions are significantly impairing the health of this prisoner as I am constantly dehydrated and fatigued. I sweat profusely. I have a loss of appetite, loss of sleep, I'm also affected mentally, as it causes me to become disoriented, confused, and irate. All in violation of MCL 791.203 and PD 03.03.130 for prisoners.

(*Id.*). The grievance was denied at Step I of the grievance process because plaintiff had not made

an attempt to resolve the issue prior to filing his grievance as required by P.D. 03.02.130. (*Id.*).

> 4.   ECF-2010-08-2638-26I

On August 16, 2010, plaintiff drafted a grievance against Health Unit Manager Anita

Young. Later that day, it was received by the grievance coordinator, who assigned Grievance No.

ECF-2010-08-2638-26I. (docket # 4-2, ID# 43). Plaintiff's grievance against Young stated as

follows:

PD 03.04.100 Health Services, pg. 2, paragraph M "Health Unit Manager shall report immediately to the warden and the appropriate Regional Medical Official any condition that poses a danger to the health of staff or prisoners at the facility. I wrote a kite on the above date, to the above official conveying the symptoms I've been subjected to, due to the extreme temperatures in the cell and requested that the above official take appropriate action to protect the prisoner(s) that are most susceptible to a heat related illness, but the above official has acted deliberately and indifferently as I informed the above official of the condition(s) that[] pose[d] a danger to the health of this prisoner and [she] has refused to acknowledge such request. I have a copy of the kite I submitted on the above date.

(*Id.*). The grievance was denied at Step I because plaintiff had not allowed sufficient time for a

response to his kite. (*Id.*).

Plaintiff states that on August 18, 2010, he made a request for a Step II appeal form

and that his request was ignored. (Plf. Aff. ¶ 12, docket # 60, ID# 305). Under P.D. 03.02.130 at

¶¶ BB, plaintiff had ten days from his receipt of a Step I response to appeal to Step II. The earliest

-14-

date plaintiff could possibly have received the Step I response was August 17, 2010, the date the Step I response was issued.  (docket # 4-2, ID # 43).  Plaintiff had at least until August 27, 2010, to repeat his request if his initial request of August 18, 2010, had been ignored.  Plaintiff states that he sent kites to the grievance coordinator on August 31 and September 14, 2010, requesting a Step II appeal form.  (Plf. Aff. ¶ 17, docket # 60, ID# 305).  Plaintiff never sought relief from the applicable appeal deadlines as authorized under P.D. 03.02.130 ¶¶ S, BB, FF.  He did not file Step II and III appeals. He did not pursue his grievance against defendant Young through a Step III decision.  (Russell Aff. ¶ 18, docket # 34-3, ID# 189).

       5.    <u>ECF-2010-82629-28J</u>

On August 15, 2010, plaintiff drafted a grievance against ECF's grievance coordinator and her supervisor, and upon receipt, the grievance was assigned the identifier Grievance No. ECF-2010-82629-28J.  (docket # 4-2, ID# 40).  Plaintiff complained that the rejection of Grievance No. ECF-2010-82597-28B (docket # 4-2, ID# 35) had been improper.  The Step I response rejecting this grievance stated that if he was not satisfied with a Step I grievance response, his remedy under the MDOC's grievance system was to pursue a Step II appeal rather than filing a new Step I grievance. (docket # 4-2, ID# 40).

       6.    <u>ECF-2010-82630-28J</u>

Plaintiff drafted another grievance against ECF's grievance coordinator and her supervisor, this time complaining that the rejection of Grievance No. ECF-2010-82588-28I had been improper.  This grievance was received on August 16, 2010, and it was assigned Grievance No. ECF-2010-82630-28J.  (docket # 4-2, ID# 39).  The Step I response rejecting this grievance

reiterated that if plaintiff was not satisfied with a Step I grievance response, his remedy was to pursue a Step II appeal rather than filing a new Step I grievance.  (*Id.*).

   7.   ECF-2010-82637-26I

On August 16, 2010, plaintiff wrote a grievance complaining that he had not received a response to a health care request complaining of symptoms he attributed to the temperature of his cell.  This grievance was received by the grievance coordinator on August 16, 2010, and assigned Grievance No. ECF-2010-82637-26I.  (docket # 4-2, ID # 42).  The Step I response indicated that two business days was not considered an adequate time to respond to plaintiff's kite.  (*Id.*).

   8.   ECF-2010-82631-28J and ECF-2010-82632-28J

On August 15, 2010, plaintiff drafted two additional grievances against ECF's grievance coordinator.  These  grievances were received on August 16, 2010.  Grievance No. ECF-2010-82631-28J complained that Grievance No. ECF-2010-08-2587-28B had been erroneously rejected.  (docket # 4-2, ID# 36).  Grievance No. ECF-2010-82632-28J made a similar complaint about the rejection of Grievance No. ECF-2010-08-2588-28I.  (docket # 4-2, ID# 37).  The Step I grievance responses were identical:  P.D. 03.02.130 "states that when you are not satisfied with your Step I response, appeal it. [D]o not write a new [S]tep I grievance."  (docket # 4-2, ID#s 36, 37).

   9.   Modified Access to Step I Grievance Forms

On August 17, 2010, Warden Curtin placed plaintiff on modified access to the grievance process because plaintiff had "demonstrated an inability and/or unwillingness to use the grievance process properly.  Such abuse of the grievance process diminishes its effectiveness,

overloads staff and impedes responses to legitimate grievances." (docket # 4-2, ID# 38).  Modified

access temporarily limited plaintiff's access to Step I grievance forms:

> For a period of 90 days you may only receive receive grievance forms from the First Step Grievance Coordinator.  If you feel that you have a legitimate grievable issue and wish to submit a grievance, you are to contact the Grievance Coordinator.  Your correspondence with the Grievance Coordinator should be clearly written and must completely describe what your complaint is about.  If your complaint is determined to have merit, concerns of a grievable issue and is submitted in accordance with OP-03.02.130, you will be provided with a grievance form.  Any grievance forms that you submit without going through the above procedure will not be processed.
>
> Therefore, you are being placed on Step I, "Modified Access" status for a period of 90 days, effective 8/17/2010 until 11/17/[20]10.

(*Id.*).

**Discussion**

### 1.    Mootness

Plaintiff is an inmate at the Macomb Correctional Facility (MRF).  Defendants are

employed by the State of Michigan at ECF.  Plaintiff's claims for injunctive relief against the

defendants are moot.  *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87

F.3d 172, 175 (6th Cir. 1996).

### 2.    First Amendment

On summary judgment, a plaintiff asserting a First Amendment retaliation[4] claim

must present evidentiary proof on which a reasonable trier of fact could find (1) that the plaintiff had

engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against

---

[4] "Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike."  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). The plaintiff has the burden of proof on all three elements. *See, e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

"The first element [plaintiff] must establish for his retaliation claim is that he was engaged in conduct protected by the First Amendment." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010). The Sixth Circuit recognizes that a prisoner's filing of a grievance can constitute protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Frivolous grievances are not protected conduct. *See Hill v. Lappin*, 630 F.3d at 472; *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (calling a hearing officer a "foul and corrupted bitch" was not protected conduct); *Herron v. Harrison*, 203 F.3d at 415. A violation of legitimate prison rules is not protected conduct.[5] *See Lockett*, 526 F.3d at 874; *Thaddeus-X*, 175 F.3d at 394. Plaintiff's abusive practice of filing new Step I grievances rather than undertaking Step II and III appeals as required by the MDOC's policy directive was not protected conduct. I will assume for analytical purposes that plaintiff engaged in protected conduct by filing Grievance No. ECF-2010-82640-22a against defendant Sanders.

The second element of a retaliation claim is an adverse action against plaintiff that would deter a person of ordinary firmness from engaging in the protected conduct. It is well established that "a prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility." *Hix v. Tennessee Dep't of*

_____

[5]"Attempting to assault another inmate, or a corrections officer, is not protected conduct under the First Amendment." *Tsosie v. Holt*, No. 3:cv-10-255, 2012 WL 1191608, at * 9 (M.D. Pa. Apr. 10, 2012).

*Corrections*, 196 F. App'x 350, 358 (6th Cir. 2006) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005)).  "[R]outine inconveniences of prison life [] do not constitute adverse action." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011).  Maintaining the status quo of plaintiff's status as an administrative segregation prisoner for a period of less than six months after he had been convicted of the major misconduct of the assault and battery on prisoner Mills is not an action that would deter a person of ordinary firmness.  The Sixth Circuit holds that the *unjustified* classification of a prisoner to administrative segregation satisfies the second prong of the retaliation standard.  *See Thaddeus-X*, 175 F.3d at 396; *Evans v. Vinson*, 427 F. App'x 437, 446 (6th Cir. 2011). Plaintiff has adduced no evidence that his classification was *unjustified*.  Rather, he essentially asserts that although justified, the classification should have been modified earlier than it was.  The Court of Appeals has never endorsed such a theory, which essentially shifts to the prison administration the burden of proving a justification for holding a violent prisoner in segregation after the time the prisoner first complains about it.

Under the causation element of a prisoner's *prima facie* case for retaliation, the subjective motivation of the decisionmaker is at issue.  "The third element of a First Amendment retaliation claim requires the plaintiff to prove a causal connection between the protected conduct and the adverse action.  When assessing motive in the context of a summary judgment motion, bare allegations of malice do not suffice to establish a constitutional claim.  This court has held that circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399-400 (6th Cir. 2010) (internal quotations and citations omitted).  Plaintiff must demonstrate that his protected speech was a substantial or motivating factor in the adverse action taken by defendant.  Specifically,

-19-

plaintiff must point to specific, nonconclusory evidence reasonably linking his speech to the adverse action. *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003). The Sixth Circuit has interpreted this inquiry to mean that a motivating factor is "essentially but-for cause-without which the action being challenged simply would not have been taken." *Vereecke*, 609 F.3d at 400 (quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007), and *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002)). "Substantial case law from this circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." *Vereecke*, 609 F.3d at 400; *see Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity standing alone, is insufficient to establish a causal connection for a retaliation claim.").

The SCC's first two decisions recommending continued confinement in administrative segregation status could not have been made in retaliation for protected conduct, as plaintiff had not yet filed a grievance. The only evidence plaintiff offers with regard to causation is the purported statement on August 30, 2010, by Sanders that "grievances don't work here at ECF." (Plf. Aff. ¶ 10). This is not sufficient evidence to support a causal connection between his protected conduct and defendant's actions recommending against introducing plaintiff into ECF's general population. Plaintiff attached a lock to a belt and used the weapon to split open another inmate's head and neck. Such attacks by prisoners are disturbingly common, even in high security prisons. *See e.g.*, *Campbell v. Holt*, 432 F. App'x 49, 51 (3d Cir. 2011); *United States v. Lewis*, 363 F. App'x 382 (6th Cir. 2010); *Mallet v. United States*, No. 1:07-cv-922, 2010 WL 148192, at * 2-4 (E.D. Tex. Jan. 8, 2010). The attacks frequently result in prisoner deaths or debilitating injuries. *See, e.g.*, *Creech v. Hardison*, No. CV-99-224, 2010 WL 1338126, at * 1 (D. Idaho Mar. 31, 2010) (Prisoner "Jensen's skull was splashed on the floor and the walls," he "was taken to the hospital and died the

same day."); *Hanna v. Ishee*, No. C-1:03-cv-801, 2009 WL 485487, at * 1 (S.D. Ohio Feb. 26, 2009); *Jacocks v. Hendrick*, No. 7:04-cv-587, 2006 WL 2850639, at * 2-3 (W.D. Va. Sept. 29, 2006). "A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,' a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994).

Assuming that Sanders did tell plaintiff that "grievances don't work" at ECF, no rational trier of fact could conclude that this is evidence of retaliatory animus. Plaintiff had recently been found guilty of a brutal attack, conduct that would reasonably lead any conscientious officer to keep plaintiff in segregation until the safety of other inmates was assured. The only reasonable interpretation of Sanders's alleged remark is that the filing of grievances would not induce the Classification Committee to release plaintiff before it was ready to do so. The retaliation doctrine protects prisoners from being punished for lodging a formal written grievance; it does not guarantee them special treatment, or cloak them with immunity, merely because they filed a grievance.

In the context of this case, the allegation that Sanders promised on August 4, 2010, to release plaintiff in thirty days from segregation borders on the preposterous. Plaintiff is serving a sentence for crimes of violence. He has a history of institutional violence, and the reason for his classification to segregation was conviction of a major misconduct charge stemming from plaintiff's brutal assault on a fellow inmate that was capable of causing life-threatening injuries. Plaintiff arrived at ECF on July 27, 2010. The review session on August 4, 2010, occurred less than ten days thereafter. Defendant's only note on the review form (ID# 56) concerned the seriousness of the misconduct and the need for plaintiff to show positive adjustment. No reasonable trier of fact could ever believe that an assistant deputy warden, dealing with a new, violent prisoner only ten days after

-21-

his arrival, would promise that prisoner a quick release from segregation.  The MDOC system requires reviews every seven days during the initial period of classification to administrative segregation, precisely to allow a week-by-week monitoring of a prisoner's status.  (*See* Policy Directive 04.05.120 ¶ BBB.)  The idea that a deputy warden would commit himself to release a prisoner from segregation in thirty days, regardless of the results of future seven-day periodic reviews, is beyond ludicrous.

The members of a Security Classification Committee are charged with the important responsibility of balancing a prisoner's desire for greater freedom against the threat proposed by that prisoner to staff and other inmates, especially where an inmate has a history of violence.  If the mere filing of grievances against committee members during the process of evaluation were enough to create a triable case of retaliation, prison administration would be severely undermined.  A prisoner in plaintiff's situation has the burden of persuading a federal court that a reasonable jury could find that the committee member's decision to continue a prisoner in segregation was somehow motivated by the intervening grievances.  In the circumstances of the present case, any prisoner would anticipate a lengthy period of confinement in administrative segregation, until such time as the committee was reasonably assured release from segregation would not pose a threat to safety and order.  On the basis of the present record, no reasonable jury could ever find that Sanders promised to release plaintiff early in the review process or that plaintiff's confinement in administrative segregation was motivated by anything other than his own history of violent conduct.

The facts of record, viewed in a light most favorable to plaintiff, fail to show that defendant's recommendation to keep plaintiff in administrative segregation was motivated by anything but plaintiff's recent, brutal attack on a fellow inmate, coupled with his history of violent

-22-

institutional behavior.  Plaintiff's decision to file grievances against defendant during the term of the administrative segregation review process does not change this result or create some sort of presumption that everything defendant did thereafter was retaliatory in nature.  I find that defendant Sanders is entitled to judgment in his favor as a matter of law on plaintiff's First Amendment claim.

### 3.    Eighth Amendment

Plaintiff alleges that defendant Young was deliberately indifferent to his serious medical needs in violation of his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause, because in August 2010, his cell was warm and unspecified psychotropic medications made him more susceptible to heat-related illnesses.  In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *Estelle*, 429 U.S. at 104-05.  In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention.  *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard.  Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a

subjective component).  501 U.S. at 298.  No reasonable trier of fact could find in plaintiff's favor on the objective or subjective components of Eighth Amendment claims against defendant Young.

The objective component of the Eighth Amendment standard requires that a plaintiff be suffering from a serious medical condition.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious."  *Hudson v. McMillian*, 503 U.S. 1,  9 (1992).  "The objective component requires a plaintiff to show that 'the medical need at issue is sufficiently serious.'"  *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)); *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010).  Plaintiff has not submitted any medical records in support of his claim.  Plaintiff has not presented evidence on which a reasonable trier of fact could find in his favor on the objective component of an Eighth Amendment claim.

The second prong under *Estelle* requires a showing of "deliberate indifference" to plaintiff's serious medical need.[6]  The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness.  A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety."  511 U.S. at 837.  The

---

[6] Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims which sound in state tort law.  *See Alspaugh v. McConnell*, 643 F.3d at 169; *Westlake*, 537 F.2d 860 n.5; *accord Minneci v. Pollard*, 132 S. Ct. 617 (2012) (refusing to imply a *Bivens* remedy against employees of a privately operated federal prison for allegedly providing inadequate medical care because state law authorized adequate alternative damages actions).

Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted).

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious medical needs. On the present record, no reasonable trier of fact could find that defendant was deliberately indifferent to a serious medical need. I find that defendant Young is entitled to judgment in her favor as a matter of law on plaintiff's Eighth Amendment claim.

Plaintiff's claim against Young based on the condition of his cell likewise fails. The Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d at 954. The function of a federal court in a conditions-of-confinement case is not how best to operate a prison facility, nor to decide what is most desirable to the inmates. *Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985). "The Constitution does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Objectively, the condition of confinement complained of must amount to an "extreme deprivation." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). The

objective component requires the court "to assess whether society considers the risk complained of to be so grave that it violates contemporary standards of decency to expose <u>anyone</u> unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Further, in assessing whether an alleged Eighth Amendment violation on the basis of exposure to warm temperatures satisfies the objective component, courts look to the duration of exposure and totality of conditions contributing to the alleged deprivation. *See Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006); *Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999). The brief period plaintiff was exposed to warm temperatures in August 2010 falls well short of satisfying the objective component. Exposure to temperatures in the 90-degree range on a few summer days is a routine occurrence for most individuals.

On the subjective component, plaintiff was required to present evidence that defendant Young acted with "deliberate indifference" to a substantial risk. *See Farmer v. Brennan*, 511 U.S. at 834. Although plaintiff's experience was undoubtedly unpleasant, the Constitution does not mandate comfortable administrative segregation cells. Plaintiff has not presented evidence on which a reasonable trier of fact could find that defendant Young was deliberately indifferent to a substantial risk. I find that defendant Young is entitled to judgment in her favor as a matter of law.

### 4.   Exhaustion of Administrative Remedies

Defendant Young has raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Woodford*, 548 U.S. at 85. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S.

at 220.  Plaintiff did not properly exhaust any grievance against defendant Young corresponding to the claims he is asserting against Young in this lawsuit.  Thus, alternatively, defendant Young is entitled to dismissal of plaintiff's Eighth Amendment claims because he failed to properly exhaust his available administrative remedies before filing this lawsuit.  *See Woodford*, 548 U.S. at 90, 93; *Siggers*, 652 F.3d at 692.

### Recommended Disposition

For the foregoing reasons,  I recommend that plaintiff's claims for injunctive relief be dismissed because they are moot.  I further recommend that defendants' motions for summary judgment (docket #s 19, 33) be granted, and that a final judgment be entered in defendants' favor on all plaintiff's claims for damages.

Dated:  June 14, 2012                    /s/  Joseph G. Scoville
                                         United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).   General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).